

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Hon. Claude A. Williams
Chairman and Executive Director
Texas Unemployment Compensation Commission
Austin, Texas

Dear Sir:

Opinion No. O-6015
Re: The authority of the Texas Unemployment
Compensation Commission to enter into
reciprocal agreements with other states
whereby benefits may be paid to employees
employed in several states; and a related
question.

You request the opinion of this department upon the question presented by your letter of May 10, 1944, which we quote below for the convenience of having the basic facts and the exact question before us. Your letter reads:

"Section 17-A (Article 5221b-15A Vernon's Civil Statutes) of the Texas Unemployment Compensation Act, on the subject of reciprocal arrangements reads as follows:

'The Commission is hereby authorized to enter into arrangements with the appropriate agencies of other States or the Federal Government whereby individuals performing services in this and other States for a single employing unit under circumstances not specifically provided for in Section 19(g) of this Act, or under similar provisions in the unemployment compensation laws of such other States, shall be deemed to be engaged in employment performed entirely within this State or within one of such other States and whereby potential rights to benefits accumulated under the employment compensation laws of several States or under such a law of the Federal Government, or both, may constitute the basis for the payment of benefits through a single appropriate agency under terms which the Commission finds will be fair and reasonable as to all affected interests and will not be liable in any substantial loss to the Fund.'

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Claude A. Williams, page 2

"This section contains two authorizations, the
first permitting reciprocal coverage agreements with
respect to tax liability and the second, dealing with
benefit payments, reading as follows:

"'The Commission is hereby authorized to enter
into arrangements with the appropriate agencies of other
States or the Federal Government . . . whereby potential
rights to benefits accumulated under the employment compensa-
tion laws of several States or under such a law of the
Federal Government, or both, may constitute the basis for the
payment of benefits through a single appropriate agency
under terms which the Commission finds will be fair and
reasonable as to all affected interests and will not result
in any substantial loss to the Fund.'

"The unemployment compensation laws of other states
have the same or similar provisions and under such provisions
the Interstate Conference of Employment Security Agencies
has prepared a plan whereby claimants who have accumulated
wage credits in several different states may be paid benefits
through a single agency. This plan will be operative with
respect to any particular state only after the agency of
such state subscribes to such plan. Under this arrangement
when a claim is filed in one state, that state is to secure
transcripts of the claimant's wage credits from other states
in which he may have accumulated credits. The state having
the largest proportion of his wage credits will be known as
the 'paying state.' On the basis of the claimant's total
wage credits, the 'paying state' will make a determination
on the claim in accordance with its own laws and will pay
the claimant accordingly. The other states where the claimant
had wage credits will reimburse the 'paying state' for part
of the benefits paid to the claimant on a pro rata basis.
That is, it will transmit that portion of the total benefits
paid to claimant corresponding to the ratio of claimant's
wage credits in that state to his total wage credits.

"Moneys requisitioned from the account of the State
of Texas in the Unemployment Trust Fund in the United States
Treasury are deposited with the Treasurer of the State of
Texas to be used by this Commission for the payment of unem-
ployment benefits. We request your advice as to whether or
not this Commission may enter into such reciprocal agreements
as are outlined above and, if we do enter into such agreements,

Hon. Claude A. Williams, page 3

we may transmit, by means of a warrant drawn by the Comptroller on the State Treasurer, to other states such amounts as may be due them by reason of their having paid benefits to claimants, based in part on such wage credits as such claimants may have with this Commission."

Our research discloses that there has been little, if any, judicial determination or construction of Section 17a, (Article 5221b-15a, V. A. C. S.) of our Texas Unemployment Compensation Act, or similar acts of other states, all of which are substantially the same as our own. Of course, judicial construction and confirmation would be helpful, but we do not deem it essential to support the conclusions we have here reached.

Section 19g, Subsections (1), (2), and (3), (Article 5221b-17g, Subsections (1), (2), and (3), V. A. C. S.) of our Unemployment Compensation Act defines "employment", and it is observed that Subsections (2) and (3) thereof deal primarily with services performed under certain conditions both within and without the State. They read as follows, quoting from the official copy of the Texas Unemployment Compensation Act:

"(2) The term 'employment' shall include an individual's entire service, performed within or both within and without this state, if:

"(A) The service is localized in this state; or

"(B) The service is not localized in any state but some of the service is performed in this state and (i) the base of operations, or, if there is no base of operations then the place from which such service is directed or controlled, is in this state; or (ii) the base of operations or place from which such service is directed or controlled is not in any state in which some part of the service is performed but the individual's residence is in this state.

"(3) (A) Service not covered under Paragraph (2) of this sub-section and performed entirely without this state, with respect to no part of which contributions are required and paid under an unemployment compensation law of any other state, shall be deemed to be employment subject to this Act if the individual performing such services is a resident of this state and the Commission approves the election of the employing unit for whom such services are performed that the entire service of such individual shall be deemed to be employment subject to this Act.

Hon. Claude A. Williams, page 4

"(B) Services covered by reciprocal agreements authorized by this Act between the Commission and the agency charged with the administration of any other state or Federal unemployment compensation law, pursuant to which all services performed by an individual for an employing unit are deemed to be performed entirely within this state, shall be deemed to be employment, if the Commission has approved an election of the employing unit for whom such services were performed pursuant to which the entire service of such individual during the period covered by such election is deemed to be employment subject to this Act."

It is to be noted that Subsection (3) is divided into paragraphs A and B, respectively. Paragraph A is obviously designed to cover services performed entirely without the State by a resident of this State, but with respect to which contributions are not required and paid under an employment compensation act of any other state. In other words it is designed to provide that a resident of this State is not to be deprived of the benefits of the law, although all of the services performed by him may be in another state. Paragraph B of Subsection (3) specifically covers services performed under reciprocal agreements authorized by Section 17a, supra, of our State Unemployment Compensation Act, and under this may fall services performed in two or more states, and in such cases as the employee does not qualify under any of the preceding conditions, that is, the service is not localized in this State; there is no base of operation or place from which said service is contracted in this State; the base of operation or place from which such services are directed is not in any state, but the employee is a resident of this State; that the service is performed entirely without this State, but with respect to which contributions are not required and paid under the laws of any other state, but the employee is a resident of this State. To express it another way, the reciprocal provision provided in Section 17a and paragraph B of 17g, Subsection 3, supra, affords a method of according benefits to employees not otherwise provided for in the other defined definitions of "employment" contained in the Act.

In the last analysis, the purpose of these interstate reciprocal provisions, common to most all the states' unemployment compensation acts, is to provide a feasible and workable method by which one state may pay benefits accruing in one or more other

states through a centrally constituted agency agreed upon, both as to coverage agreements with respect to tax liability and in the payment of benefit liability, thus facilitating and simplifying the administration of the law where interstate relationship becomes an important factor.

We have been at some pains to analyze what we conceive to be the pertinent provisions of our Unemployment Compensation Act defining "employment", not with the thought that they are not as well understood by you as by us, but as a predicate for our conclusions upon what we conceive to be the two main questions for us to decide. Even if we should be mistaken in some detail in our analysis of our statutes defining "employment", as they are somewhat intricate, it will not necessarily detract from the two main questions we must decide and the conclusions we have reached. These questions are:

First - Does the reciprocal plan proposed run counter in any particular to Section 303a of the Social Security Act and Section 1603a of the Internal Revenue Code?

Second - Is there a conflict, or possibility of conflict, with our law providing for the charging of unemployment benefits against employers' accounts for experience rating purposes?

We shall first consider whether or not Section 301a of the Social Security Act and Section 1603a of the Internal Revenue Code contain provisions which might present legal barriers to entering into such cooperative and interstate plan. These two provisions set out the requirements to be incorporated in state laws in order that the state may receive federal funds for unemployment compensation administration, and in order that the employers of the state may qualify for the ninety per cent federal credit. An examination of the Social Security Act and of the Internal Revenue Code will not in our view disclose any prohibitory limitations that would disqualify our State by the adoption of a multi-state arrangement under the authority specifically conferred upon the Commission by Section 17a, supra, of our Unemployment Compensation Act.

The second question is more difficult to solve for there is some lack of uniformity under the various state acts as to the order in which the employers' accounts are charged for experience rating purposes. We believe, however, that this

Hon. Claude A. Williams, page 6

may be obviated and safeguarded by the Commission in making reciprocal agreements with another state or states by that portion of Section 17a, supra, as follows:

". . . under terms which the Commission finds will be fair and reasonable as to all affected interests and will not result in any substantial loss to the Fund."

That part of the appropriation bill covering the payment of benefits enacted by the 48th Legislature reads as follows:

"It is specifically provided that all moneys now on deposit to the credit of the Unemployment Compensation Fund, and any moneys received for the credit of such fund, are hereby appropriated for the payment of benefits and refunds as authorized by the provisions of the Unemployment Compensation Law."

From the foregoing it follows that we have reached the conclusion that the Texas Unemployment Compensation Commission is authorized to enter into reciprocal agreements with other states, such as outlined in your letter, and that the Comptroller of Public Accounts would be authorized to issue warrants, upon proper certificate from the Commission, to reimburse such cooperating states, for the pro rata share paid by them in our behalf, acting as the designated central and clearing agency, and you are accordingly so advised.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

D. P. Lollar
Assistant

LPL:AMM

APPROVED MAY 27, 1944

ATTORNEY GENERAL OF TEXAS